UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

EDWIN DUANE LEWIS,

        Plaintiff,                   Case No. 1:14-cv-567

v.                                       Honorable Paul L. Maloney

MILDRED SMOKER et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Edwin Duane Lewis presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF), although the events about which he complains took place while he was housed at both LRF and the Lakeland Correctional Facility (LCF). Plaintiff identifies the following as Defendants: MDOC Director Daniel Heyns; LCF employees Resident Unit Officer (RUO) Mildred Smoker, Assistant Resident Unit Supervisor (ARUS) James Bradley, Resident Unit Manager (RUM) Warren Link and Warden Bonita Hoffner; LRF employees ARUS James Jones, ARUS Thomas Irby, Deputy Warden Shawn Brewer, Jeff Minnerick, and Warden Mary K. Berghuis.

Plaintiff is serving a life sentence for first-degree, premeditated murder, imposed by a jury in the Saginaw County Circuit Court on October 21, 1992. Plaintiff alleges that on April 18, 2012, under the ruse of a shakedown, Defendant Smoker entered his cell and confiscated nine sheets of paper which contained twenty-nine color prints of photographs of the murder victim's wounds and the crime scene, which were used as exhibits in Plaintiff's criminal trial.[1] Plaintiff alleges that the exhibits were sent to him by his appointed appellate counsel in November, 2000, that they are legal materials and that they are critical to his appeal. Plaintiff alleges that he will be irreparably damaged if Defendants continue to hold the exhibits because they may be lost or destroyed and, according to Plaintiff, the exhibits "are irreplaceable." (Compl., docket #1, Page ID#2.)

After Defendant Smoker confiscated the exhibits, Plaintiff received a Notice of Intent to Conduct an Administrative Hearing. (*See* docket #1-1, Page ID#19.) An Administrative Hearing was conducted by Defendant Bradley, who upheld the confiscation of the exhibits pursuant to

---

[1]These materials are hereafter referred to as "the exhibits."

MDOC policy directive (PD) 05.03.118, which prohibits certain types of incoming mail, including mail containing photographs of victims or crime scenes. (*See id.* at Page ID#21.) During the administrative hearing, Plaintiff explained that he needed the exhibits to support his appeal and that PD 05.03.118 was inapplicable. Plaintiff identifies P.D. 04.07.112 as the applicable policy, noting that this policy governs prisoner personal property including legal property. The confiscation of the exhibits was upheld at the administrative hearing. (*See id.* at Page ID#21.)

Plaintiff filed a grievance alleging that the confiscation of the exhibits denied him access to the courts and violated his right to due process because he needed the exhibits for a "criminal appeal in the U.S. District Court." (*Id.* at Page ID#23.) Plaintiff's grievance was denied by Defendant Link at Step I, Defendant Hoffner at Step II, and finally, by Defendant Heyns' office at Step III.

On January 11, 2013, Plaintiff was transferred from LCF to LRF. Plaintiff spoke to Defendant James, inquiring about the exhibits. Defendant James told Plaintiff his legal personal property had not yet been transferred. The next day, Plaintiff asked Defendant Jones whether the exhibits had arrived. Defendant Jones told Plaintiff that he had received Plaintiff's file from LCF but the exhibits were not part of the file. Defendant Jones told Plaintiff he would get in touch with Defendant Bradley.

The exhibits eventually arrived at LRF. Plaintiff received another Notice of Intent to Conduct an Administrative Hearing. (*See* docket #1-1, Page ID#36.) An administrative hearing was held to determine if Plaintiff would be allowed to keep the exhibits in his possession. (*See id.*) The administrative hearing was conducted by Defendant Irby on March 29, 2013. Plaintiff was forbidden from possessing the exhibits. Defendant Irby noted on the Administrative Hearing Report

that Plaintiff intended to appeal and that the exhibits would be held pending appeal. (*See id.* at Page ID# 38.)

Plaintiff filed a grievance alleging that Defendant Irby relied on false information at the administrative hearing and that the confiscation of the exhibits denied him access to the courts, violated the ex post facto clause, the separation of powers doctrine, MDOC policy, and the state and federal constitutions.

Plaintiff's grievance was denied by Defendants Brewer and Minnerick at Step I, Defendant Berghuis at Step II and by Defendant Heyns' office at Step III.

Plaintiff claims that the confiscation of his materials was a violation of due process and denied him access to the Courts. Additionally, Plaintiff claims that the confiscation of his materials violates MDOC policy directives 04.07.112 and 05.03.116. Finally, Plaintiff alleges that the confiscation of the exhibits violated the doctrine of separation of powers because Defendants are members of the Executive Branch and not the judiciary. Plaintiff alleges that the judiciary, by way of a court order, authorized him to obtain the exhibits.

As relief, Plaintiff seeks compensatory damages.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albrigh v. Oliver*, 510 U.S. 266, 271 (1994).

A.	Supervisory Liability

Plaintiff alleges that Defendants Link, Hoffner, Brewer, Minnerick, Berghuis and Heyns are liable for a variety of constitutional violations because they denied his grievances.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (defendants could not be held liable for plaintiff's termination from his commissary job when their only roles in the action involved the denial of administrative grievances or the failure to act). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Link, Hoffner, Brewer, Minnerick, Berghuis and Heyns[2] engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

---

[2] With respect to Defendant Heyns, Plaintiff's allegations are even more attenuated because although the denial of Plaintiff's grievance came from the Director's Office, Defendant Heyns does not appear to have actually signed any of the grievance denials. (*See* docket #1-1, Page ID##33, 55.)

B. Due Process

Plaintiff alleges that the administrative hearings held at LRF and LCF denied him due process because in prohibiting Plaintiff from possessing the exhibits, they relied on an inapplicable MDOC policy and failed to consider applicable MDOC policies which would have supported Plaintiff's right to possess the exhibits.

To the extent Plaintiff claims that he was deprived of his property without due process of law, Paintiff's claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Where a Plaintiff's claim is premised upon unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive

04.07.112, ¶ B (effective Jul. 9, 2012). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Even if Plaintiff's due process claim were not barred by the *Parratt* doctrine and assuming *arguendo* that Plaintiff has a property interest in the exhibits, Plaintiff appears to have received the process to which he was entitled.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A due process violation actionable under § 1983 "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision

is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125 (emphasis in original). At a minimum, due process requires that "a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). To satisfy due process,

> the "hearing . . . need not be elaborate. . . . the formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action."

*Id.* at 545 (internal citations omitted). Indeed, even where significant liberty interests are at stake, as in the case of parole revocation, due process is satisfied where:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Wolff v. McDonnell*, 418 U.S. 539, 559 (1974) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

Plaintiff received administrative hearings at both LCF and LRF. In connection with each hearing, Plaintiff received a Notice of Intent to Conduct an Administrative Hearing. (Docket

#1-1, Page ID##19, 36.) These Notices described the reason for the hearing, cited the operative MDOC policies, described the prohibited items, explained the options for disposition and permitted Plaintiff to seek a hearing, which he did. (*Id.*) Hearings were held before Defendant Bradley at LCF and Defendant Irby at LRF. Plaintiff was present at both hearings and made statements explaining that the exhibits were legal documents and that he needed the exhibits to pursue legal action. (*Id.* at Page ID##21, 38.) Defendants Bradley and Irby both determined that Plaintiff would not be allowed to possess the exhibits. Plaintiff appealed Defendant Bradley's and Defendant Irby's decision through each of the three steps of the prison grievance process. Defendant Heyns' office conducted the final review and upheld the result of both the LCF and the LRF administrative hearings. (Docket #1-1, Page ID##33, 55.) Although Plaintiff remains dissatisfied with the result, Plaintiff received sufficient process. As previously discussed, Plaintiff does not have a constitutional guarantee of a specific result. *Zimermon*, 494 U.S. at 125.

Finally, to the extent Plaintiff alleges that Defendants failed to follow MDOC policy related to legal personal property, this claim is not actionable under § 1983. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, to the extent Plaintiff presents any state-law claims, those claims will be dismissed without prejudice.

Based on the foregoing, Plaintiff's allegations are insufficient to state a Fourteenth Amendment claim for violation of due process. Consequently, he fails to state such a claim.

        C.        Access to Courts

Plaintiff alleges that the confiscation of the exhibits violated his right to access the courts.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland*

*v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824-28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).  In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

    The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff fails to establish that he suffered an actual injury as a result of the confiscation of the exhibits. Although he vaguely alleges that he needs the exhibits for an appeal, he does not allege the nature of his claims or the relief sought. Moreover, given that Plaintiff was convicted in 1992, he has not explained what possible appeal remains open to him or how the exhibits would be necessary to demonstrate entitlement to relief. Consequently, Plaintiff's allegations are insufficient to state an access to courts claim.

### D. Failure to Follow MDOC Policy

As stated above, Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation because section 1983 is addressed to remedying violations of federal law, not state law. *Lugar*, 457 U.S. at 924; *Laney*, 501 F.3d at 580-81. Additionally, as noted above, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. *Coleman*, 1998 WL 476226, at *1.

### E. Separation of Powers

Plaintiff claims that Defendants' confiscation of the exhibits violated the doctrine of separation of powers. Apparently, Plaintiff believes that because he allegedly obtained a court order

allowing him access to the exhibits, Defendants, who are executive branch employees, confiscated the exhibits in some way that interfered with the judiciary. To the extent Plaintiff states any claim, it is a claim arising under the state and not the federal Constitution. Defendants are executive branch employees of the state of Michigan, and the trial court judge who allegedly ordered that Plaintiff receive the exhibits is a member of the state judiciary. As stated above, section 1983 is addressed to remedying violations of federal, not state law. *See Lugar* 457 U.S. at 924; *Laney*, 501 F.3d at 580-81. Additionally, as noted above, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). To the extent that Plaintiff raises claims under state law, those claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: August 29, 2014              /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    Chief United States District Judge